(71 Misc. Rep. 77.)

### PEOPLE ex rel. ENRIGHT v. MEYERS.

(Court of General Sessions, New York County. February, 1911.)

1. JUDGES (§ 49*)—DISQUALIFICATIONS—GROUNDS.

That a magistrate before whom accused was tried knew the accused and had sat in trial of him on previous occasions did not disqualify the magistrate from sitting so as to require a reversal of the conviction, especially where defendant was represented by counsel, and clearly proven guilty after a fair trial.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 187, 188; Dec. Dig. § 49.*]

2. CONSTITUTIONAL LAW (§ 225*)—DISCRIMINATION AGAINST LOCALITIES—CRIMINAL STATUTES.

Where an act may cause greater damage and inconvenience in cities than in villages of the state, it is not violative of the Constitution nor of the principles of sound legislation to make a distinction.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 681, 682; Dec. Dig. § 225.*]

3. CRIMINAL LAW (§ 15*)—STATUTES—IMPLIED REPEAL.

The provisions of Consolidation Act (Laws 1882, c. 410) § 1458, defining disorderly conduct tending to a breach of the peace, and making it an offense cognizable by the police justices and their successors, the city magistrates having been continued by Greater New York charter (Laws 1897, c. 378), the fact that the sections of the latter statute providing punishment for that offense were repealed by the inferior criminal courts act (Laws 1910, c. 659), containing identical provisions for the punishment of the same offense, does not thereby repeal the provisions of the consolidation act in relation thereto; it being the legislative intent that said provisions should be construed with those of the inferior criminal courts act, so that the offense is still triable by a city magistrate.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1, 16–20; Dec. Dig. § 15.*]

4. STATUTES (§ 158*)—IMPLIED REPEAL.

Repeals by implication are not favored in law, unless the repugnancy between the two statutes is irreconcilable.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 228; Dec. Dig. § 158.*]

5. STATUTES (§ 161*)—CONSTRUCTION—CONSTRUING LAST ACT.

Statutes in relation to the same general subject-matter should be harmonized, if possible, so that both may stand.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 230–234; Dec. Dig. § 161.*]

6. CONSTITUTIONAL LAW (§ 250*)—CRIMINAL LAW (§ 1206*)—EQUAL PROTECTION OF THE LAW—CRIMINAL STATUTES.

The statute prescribing a flat sentence of a given term for a specified offense is not in violation of the fourteenth amendment of federal Constitution guaranteeing the equal protection of the laws, because it provides also that the magistrate may commit a person convicted to the workhouse or county jail for a definite period not exceeding six months, on the ground that it allows accused to be subjected to an infamous punishment for a minor offense triable before a magistrate, since the constitutional rights of accused may be secured by him by an appeal.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 711–713; Dec. Dig. § 250;* Criminal Law, Cent. Dig. §§ 3271–3280; Dec. Dig. § 1206.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Harry Meyers was convicted before the magistrate of disorderly conduct tending to a breach of the peace, and he appeals. Affirmed.

Wahle & Kringel (Charles G. F. Wahle, of counsel), for appellant.
Charles S. Whitman, Dist. Atty. (Robert C. Taylor, of counsel), for respondent.

MALONE, J. This case is brought here on appeal from a judgment rendered by a magistrate at the Third District City Magistrates' Court on the 15th day of October, 1910. From the return it appears that William J. Enright, of the detective bureau of the police department of the city of New York, charged the defendant with jostling against pedestrians and slapping his hands on the person of Samuel Gordon, who, with a number of other persons, was standing alongside of a pushcart in Orchard street, in the borough of Manhattan, city of New York. After trial, in which the defendant was represented by counsel, judgment was rendered by the magistrate that the defendant committed an act which tended to a breach of the peace, as defined under section 1458 of the consolidation act of the city of New York (Laws 1882, c. 410). He was thereupon committed to the workhouse for a period of six months, as provided by section 88, sub. 2, c. 659, Laws of 1910.

It is argued that the judgment should be reversed, because: First. Since the enactment of the inferior criminal courts act of the city of New York the offense theretofore known as "disorderly conduct tending to a breach of the peace" has not been continued in such manner as to vest the city magistrates with power to convict for such offenses. Second. The sentence of the defendant is indefinite, because it does not appear whether he was sentenced under subdivision 1 or 2 of section 88 of the inferior criminal courts act of the city of New York. Third. If sentenced under subdivision 2 of section 88 of the inferior criminal courts act, such sentence is inoperative, because the punishment provided under subdivisions 1 and 2 contravenes the fourteenth amendment of the Constitution of the United States. Fourth. Generally for errors committed upon the trial.

Much learning and research have been displayed by counsel for the appellant on the points urged for a reversal of this judgment. Much wider range, perhaps, has been taken than the cause requires. Most of the questions depend, I think, upon a fair and reasonable construction of the statutes relating to "disorderly conduct tending to a breach of the peace." The points argued for a reversal of the judgment for errors committed on the trial I regard as neither substantial nor tenable. The magistrate saw and heard the witnesses. The proof was satisfactory to him that the defendant placed his hands on the person of Samuel Gordon, and that he was seen to stretch one of his hands in the direction of his pocket. The magistrate, therefore, was justified in inferring that his intention was to pick a pocket, and in finding that the act was one which tended to a breach of the peace.

[1] I do not think from an examination of the record that the magistrate was disqualified from hearing the case. It appears that he knew the defendant and had sat in trial of him on previous occa-

sions. Nevertheless the defendant was represented by counsel. He and all witnesses were accorded a full, patient, and legal hearing. There as no intimation, so far as is disclosed, that the magistrate had ever before seen the defendant until all of the evidence had been adduced and the defendant's guilt clearly proven. To test the validity of this assignment of error, let us assume a case. Suppose there was a large town in one of the rural districts of the state where there was only one justice of the peace. Upon the theory of the appellant all that a person would have to do would be to be convicted once, and then there would be no possibility of his ever being tried again. The law, I apprehend, is not open to such an imputation, especially where there is no interest, prejudice, or bias shown on the part of the trial magistrate. No such objection was taken to the proceedings herein by the defendant's counsel, and this court is bound to sustain the judgment of conviction because of the quantity and quality of the proof unless a reversal may be predicated upon other assignments alleged in support of this appeal. If section 1458 of the consolidation act has been repealed by Laws 1910, c. 659, or if the sentence imposed be void because it is ambiguous, or if it be in contravention of the Constitution of the United States, the judgment of conviction must be reversed.

[2] It is argued that under the inferior criminal courts act of the city of New York (Laws of 1910, c. 659) the offense of "disorderly conduct tending to a breach of the peace" is not one of which a person may be tried or convicted in the magistrates' courts. Prior to January 1, 1898, the city of New York was governed by its ancient charters and the laws of the state of New York. Under sections 1458 to 1463 of the consolidation act "disorderly conduct tending to a breach of the peace" became a punishable minor offense. In no other locality of the state of New York was there such an offense. The Legislature, however, having regard to the conditions existing in New York city, made it an offense cognizable by the jurisdiction of the police justices and their successors, the city magistrates. The reason is obvious. The same act might cause greater damage, mischief, and inconvenience in some subdivisions of the state than in others. This is a matter of fact which may be ascertained by the Legislature, and, whenever it shall appear that an act from any circumstance is more mischievous and dangerous when committed in cities than when committed in villages of the state, it is no violation of the Constitution nor of the principles of sound legislation to make a distinction.

[3] Under the Greater New York charter (Laws of 1897, c. 378, as amended) section 1458 of the consolidation act was continued in operation, and the offense of "disorderly conduct tending to a breach of the peace" extended within the limits of the greater city of New York as consolidated. People ex rel. Clark v. Keeper, etc., 176 N. Y. 465, 68 N. E. 884; People ex rel. Smith v. Van De Carr, 86 App. Div. 9, 83 N. Y. Supp. 245; People ex rel. Frank v. Davis, 80 App. Div. 448, 80 N. Y. Supp. 872. Under sections 707, 707a, 708, 710, and 711 of the Greater New York charter, provision was made for the punishment of the offense just as is made in the inferior criminal courts act in sections 88, 90, 91 and 92. The

sections of the charter, however, did not define the meaning of the offense "disorderly conduct tending to a breach of the peace." Neither do sections 88, 90, 91 and 92 of the inferior criminal courts act. Under section 120 of the inferior criminal courts act, sections 707, 707a, 708, 710 and 711 of the Greater New York charter were expressly repealed. It is therefore argued that ·the enactment of the new law eliminated the operation of section 1458 of the consolidation act; in other words, that under its provisions there is no such offense as that of "disorderly conduct tending to a breach of the peace" in the city of New York, and consequently no jurisdiction in the magistrate to try and convict the defendant under the complaint.

Upon the coming into existence of Greater New York this question arose in the Appellate Division of the first and second departments. It was held that sections 1458 and 1459 of the consolidation act were continued under sections 1608 and 1610 of the charter; that otherwise sections 707 to 712 of the charter, providing a new system .of cumulative punishment for disorderly conduct, would be utterly meaningless upon any theory that the consolidation act sections had been repealed. People ex rel. Smith v. Van De Carr, supra; People ex rel. Frank v. Davis, supra. It is not pretended that chapter 659 of the Laws of 1910 expressly repealed section 1458 of the consolidation act. Assuredly the provisions of section 88 of the inferior criminal courts act are without meaning if section 1458 of the consolidation act was repealed.

Laws are presumed to be passed with deliberation, and with a full knowledge of all existing statutes on the same subject. It is therefore reasonable to conclude that the Legislature in passing a statute did not intend to interfere with or abrogate a former law to which it expressly referred, and which is necessary to give vitality to it. The intention of the Legislature to combine section 1458 of the consolidation act with the provisions of the inferior criminal courts act is obvious, because in section 79 of the inferior criminal courts act there is an express reference to it. The Legislature may regulate a power granted by a previous statute not inconsistent with it.

[4] Repeals by implication are not favored in law, unless the repugnancy between the two is irreconcilable. The new law does not take away any right nor grant any substantially new power.

[5] Under well-settled principles of construction, both of these statutes should be harmonized, if possible, with what is reasonable and convenient. There is certainly much room for both to operate without conflict. They are auxiliary statutes, each a complement of the other, and designed to guard and secure a governmental purpose, not to impair or destroy it. The rule sought by the appellant would lead to intolerable confusion, and expose the·city to lack of necessary protection from constantly recurring offenses which must be determined summarily by .the magistrates of the city ex necessitate rei. I am of the opinion that the reasoning in People ex rel. Frank v. Davis, supra, and People ex rel. Smith v. Van De Carr, supra, applies with equal cogency to the case at bar; that section 1458 of the consolidation act is incorporated into the inferior criminal courts act just as it was construed to be incorporated into the charter of Greater

New York. All that the provisions of sections 88, 90, 91, and 92 of the inferior criminal courts act did was to supersede sections 707 to 712 of the charter. By this interpretation, which I think is fair and reasonable, both acts may be enforced and made to operate in harmony and without absurdity.

[6] It is assigned that the sentence is void because it is said to be uncertain as to whether it was imposed under subdivision 1 or 2 of section 88 of the inferior criminal courts act. The answer is that the sentence was for a term of six months flat, and the return is that it was explicitly inflicted under subdivision 2 of section 88. Was the sentence, then, in contravention of the fourteenth amendment to the Constitution of the United States? The equal protection of the laws as used in the fourteenth amendment to the Constitution of the United States means equal security under them to every one under similar terms in his life, liberty, property, and pursuit of happiness. It purposes to exclude everything that is unequal, arbitrary, and unfair respecting the rights of citizens. Even a convict has all the rights of a citizen except as they are limited by the law and the proceedings for the proper execution of the law. In Barbier v. Connolly, 113 U. S. 27, 32, 5 Sup. Ct. 357, 360 (28 L. Ed. 923), Field, J., said:

"Class legislation, discriminating against some and favoring others, is prohibited, but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment. In the execution of admitted powers unnecessary proceedings are often required which are cumbersome, dilatory, and expensive; yet, if no discrimination against any one be made and no substantial right be impaired by them, they are not obnoxious to any circumstantial objection. The inconveniences arising in the administration of the laws from this cause are matters entirely for the consideration of the state. They can be remedied only by the state."

It is an established canon of interpretation that every statute is presumed to be constitutional and every intendment is in favor of validity. When a statute is challenged as in conflict with the fundamental law, a clear and substantial variance must be found to exist to justify its condemnation.

The act out of which this question has been raised I confess is fruitful of legal points. It is to be regretted that in framing laws care is not always taken to write them with such precision and fullness that every expression shall, like rays of light, carry clearness and conviction to the mind of the reader. Heretofore the punishment of "disorderly conduct tending to a breach of the peace," as provided for by the consolidation act and by the charter, was threefold: First, a fine not exceeding $10; second, commitment to the workhouse for a term of six months; third, commitment for a term of six months in default of a peace bond. People ex rel. Reynolds v. Warden, 44 Misc. Rep. 149, 89 N. Y. Supp. 830. These forms of punishment have been held to be constitutional in People ex rel. Abrams v. Fox, 77 App. Div. 245, 79 N. Y. Supp. 56. The defendant had been tried and convicted by one of the city magistrates on the charge of being a vagrant. He was sentenced to the workhouse pursuant to provisions of sections 707 to 710, inclusive, and section 712 of the Greater New

York charter "for a term of six months unless sooner discharged by due course of law." It was urged upon appeal that the term of the imprisonment was unconstitutional and void. At page 250 of 77 App. Div., at page 59 of 79 N. Y. Supp., supra, Laughlin, J., said:

"There can be no question but that it was competent for the Legislature to prescribe a flat sentence of six months for such offenses, but the statute indicates that it was the intention of the Legislature to have the prisoner, after being thus sentenced, discharged at an earlier period, provided the committing magistrate approved thereof, the date of such discharge depending on the question as to whether he had been previously convicted of any of the offenses specified within the period mentioned and how often. The Legislature has emphasized its approval of this system of punishment, and has, in effect, declared that in its wisdom it is impracticable to determine the facts with reference to the previous conviction at the time of imposing sentence. * * * No substantial right of the prisoner is invaded. The Legislature might have omitted any or all of them. The judicial functions are fully left to the court. The trial, conviction, and sentence are unquestionably legal."

Section 88 of chapter 659 of the Laws of 1910, while re-enacting the three different forms of punishment heretofore mentioned, adds another under subdivision 2 of the act, namely:

"The magistrate may impose a penalty as follows: Commit the person so convicted in the boroughs of Manhattan, Brooklyn and the Bronx to the workhouse and in the other boroughs to the county jails therein for a definite period not to exceed six months."

The legislation with reference to the minor offense of "disorderly conduct tending to a breach of the peace" has been progressive in order to meet the changed conditions and growing population in the city of New York. I am satisfied that it is both the right and duty of the Legislature, in its care of the general peace and safety of the city, to extend the operation and system of punishment, so that it shall become effective in deterring and discouraging criminal proclivities. This is not extraordinary legislation. On its principle has been justified a multitude of special acts regulating municipal affairs in the city of New York, and subdivision 2 of section 88, supra, was enacted to meet such a situation as is raised in this record. Where the criminal history of a defendant is ascertained by a city magistrate on the trial, or when a defendant has been previously arraigned and convicted of similar offenses by the trial magistrate, bringing his criminal record within his own independent knowledge, power is conferred by subdivision 2, supra, to fix the punishment for any period not exceeding six months.

In construing the amendment, we must consider its design and practical tendency, its reasonableness and necessity. A law is not to be pronounced unwise nor condemned as unreasonable because it may occasion some evil. All general laws are liable to this objection, yet without general laws society could not be governed. Whenever a law is found to be a dead letter, or productive of little or no good, or to cause much evil, it well deserves the attention of its makers. Until it is repealed it is binding upon its subjects.

Entertaining this opinion of the object and necessity of subdivision 2, supra, the court would fail in its duty to the public did it not say

that it deemed it to be a wise and prudent addition to the law. To the objection on constitutional grounds that the defendant may be subjected under this power to an infamous punishment for six months, it is sufficient to observe that the proceedings before the magistrate in this case are agreeable to the practice in such cases. A party may be tried and convicted before a magistrate of minor offenses to which is annexed infamous punishment. He is entitled to an appeal to this court, which may affirm or reverse the judgment for error. It may modify the sentence imposed by the magistrate if it appears for any reason to be unjust or excessive. Code Cr. Proc. § 764. A defendant's constitutional privilege is thus secured to him. If on conviction he does not appeal, it is a voluntary waiver of his privilege and an acquiescence in the judgment. An appeal was granted in this case, and the merits of the conviction have been deliberately revised. I do not perceive that the defendant has been deprived of any rights secured to him by the Constitution. The offense was established clearly, and the punishment for its commission does not seem to be excessive. The magistrate might have held him to await the action of the grand jury for the crime of attempted grand larceny in the second degree, the maximum punishment for which is two years and six months in state prison.

Omission to dwell upon the various minor arguments urged by the learned counsel for the appellant must not be taken as evidence that they have not been considered. All of the points have been carefully examined.

No substantial ground appearing upon which this conviction should be disturbed, it follows from the views expressed that the judgment must be affirmed.

Judgment affirmed.